LUTTERBECK v. THE TOLEDO CONSOLIDATED STREET RAILWAY COMPANY.

1. HOW INSTRUCTIONS MUST BE GIVEN.

It is the duty of the court to give or refuse the written instructions prepared by counsel before argument is commenced, and without any change or modification.

HAYNES, J.

The petition here is prosecuted for the purpose of reversing the judgment of the court of common pleas in an action pending and tried in that court, wherein William Lutterbeck was plaintiff and The Toledo Consolidated Street Railway company was defendant. The action was brought by Lutterbeck for injuries alleged to have been received by him while alighting from a car of the defendant company, at a point nearly opposite the depot of the Pennsylvania Railway company, in Lower Town.

The facts of the case, as claimed by the plaintiff below, are, that he was residing in Lower Town at that time and was employed by the Toledo Iron Metal Wheel company, out at Auburndale, as a night watchman; that he was accustomed to go out there at night, remain there over night in the performance of his duties, and would board defendant's cars near the Milburn Wagon Works, a little before 7 o'clock in the morning for the purpose of returning home; that on the morning in question, having taken a car, he proceeded down and was transferred on to a Summit street car and came down to the Pennsylvania depot. There were on this car two or three other parties, apparently destined to the Pennsylvania depot, and himself. That the other three parties got off the car at the depot and he followed them—the car being upon the right hand track as you go east, and he proceeded to get out upon the left hand side as the car headed east, which brought him facing the other track—the left-hand track. That as he came out he sprang off the car, stepped onto the track, and, just then, was blinded by a flash of electricity and he made a spring, and he claims that he was hit in his side, and thrown some distance across the track, landing upon the paved street and was severely injured, from which injuries he has been suffering ever since.

The testimony upon the part of the defendant company tended to show that he got off the car upon the *right* hand side of the car as the car was going east, being the side next to the depot—and walked around the rear end of the car from which he had alighted and then proceeded to cross the track and that just as he stepped upon the track he stepped in front of a car that was proceeding west and which at that time was being brought to a stop by the motorman in charge of it.

Evidence was given by the plaintiff to show that there was an ordinance of the city requiring that cars, when they meet, should slow up, their rate of speed not to exceed two miles per hour, and the plaintiff claimed and alleged and offered evidence tending to prove, that the car, at the time he was struck by it, was running at a greater rate of speed than two miles per hour. This ordinance is paragraph eight of section 604 of the General Ordinances of the city of Toledo, which provides ;

"Every street railway car shall slacken speed on approaching another car standing upon a track for the purpose of receiving or discharging passengers at a distance not greater than one foot from the front thereof, and shall not pass said car while stationary, at a speed greater than two miles per hour." * * * * *

Evidence was given by the plaintiff to show that in coming down to take the cars to go to his work, his natural route would be out Magnolia street to Summit street. But he says the cars had run there rather rapidly, and, for that reason, he had been in the habit of coming down to the Pennsylvania depot, a distance of a block and a half, and taking the cars there. He says the cars always stopped there at night, to take on and let off passengers, and he got on there. There was a question as to whether they stopped there in the morning, and there was some evidence tending to show that they stopped there in the morning as they went east usually—that is, that the car that went east and the one that went west, stopped—that he had seen them stop.

We think the testimony shows very clearly that the plaintiff got off on the right hand side of the car as it went east ; that at or about the time he got off the car started forward to go on its course ; that he passed around the rear end of the car and stepped upon the other track of the street railway without looking up or down, to the right or to the left, or making any examination to see whether a car was coming from the east ; that, as he stepped on, there was a car in fact coming from the east and going west and was at that time being brought to a stop for the purpose of receiving a passenger who was standing upon the opposite side of the street, and that, just as he stepped upon the track, some one shouted and the plaintiff sprang forward and crossed the outer rail of the track and the step of the car hit his right foot and tripped him and he fell upon the street and that whatever injuries he received were incurred by his so falling. The car at the time it struck him was very near to the usual stopping place, was going very slow and was brought to a stop immediately afterwards. There was some testimony showing that it moved about forty-seven feet before coming to a stop, and other testimony showing that it was only the length of the car. How much power the motorman put on at the time, is not shown, excepting that he brought his car, after the man was hit, to a standstill, and that car received the injured man upon it and carried him up town.

We are clearly of the opinion that in this matter there was no negligence on the part of the railroad company, or its employees, that contributed to this injury, at least anything of a marked degree. For my-

Lutterbeck v. Street Ry. Co.

self, I do not think there was any negligence on the part of the defendant company. But we do think there was negligence on the part of the plaintiff in stepping upon that track, dashing forward upon it without looking.

The case has been argued here also upon some alleged errors in the charge of the court to the jury. The record shows that at the close of the testimony by the respective parties, the plaintiff and defendant each requested the court to give certain propositions of law in its charge to the jury, evidently to be given before the case was argued; and the court did given certain propositions which it had been requested to charge, both by the plaintiff and the defendant, and then, at the close of the arguments, the record states this: "And thereupon after the arguments by the respective parties to the jury, the court said to the parties that inasmuch as the requests to charge which had been approved and given, presented so fully the propositions of law involved, the court would submit the case to the jury without further instruction unless counsel wished additional instructions given by the court, and counsel replied that they had no further requests."

Under section 5190, it is the duty of the court, when requested to do so to charge or refuse to charge the propositions that may be asked by either party. The 5th section of the statute reads as follows:

"When the evidence is concluded, either party may present written instructions to the court on matters of law, and request the same to be given to the jury, which instructions shall be given or refused by the court before the argument to the jury is commenced."

We have held that it is the duty of the court to give or refuse these propositions as they are presented to it, without any change or modification. And then the statute further provides, in section 7:

"The court, after the argument is concluded, shall, before proceeding with other business, charge the jury; any charge shall be reduced to writing by the court, if either party, before the argument to the jury is commenced, request it; a charge or instruction, when so written and given, shall not be orally qualified, modified or in any manner explained to the jury by the court; and all written charges and instructions shall be taken by the jurors in their retirement, and returned with their verdict into court, and shall remain on file with the papers of the case."

It will be seen that this section provides that the court, after the argument, shall proceed to charge the jury. We do not look with favor upon the giving of a series of propositions in the final charge to the jury but the propositions which were given by the court before the charge, he was to give or refuse to give as they were presented and the court did, as a matter of fact, give nearly all that were presented by the plaintiff and the defendant, and after the argument to the jury attention was called to the fact that these propositions had been given, and the statement made by the court to counsel that the court would not give any further charge unless requested so to do, and counsel announced that they were content. Now, on this state of facts, the plaintiff in error claims that the court erred in giving two propositions on behalf of the defendant. One of these is the 7th, and reads as follows:

"If the jury find from the evidence that the plaintiff directly contributed in any degree to the injury complained of in his petition, by his own negligence, then he cannot recover, and your verdict should be for the defendant."

And that the court gave and added to it—reading from Judge Peck's

definition of the word "negligence" from one of the supreme court reports, as follows:

"Ordinary care is not defined in the charge copied in the bill of exceptions, but it is well known to mean that degree of care which persons of ordinary care and prudence are accustomed to use and employ under the same or similar circumstances, in order to conduct the enterprise in which they are engaged to a safe and successful termination, having due regard to the rights of others and the objects to be accomplished."

The 10th proposition was excepted to. It reads as follows:

"If the jury find from the evidence that the plaintiff knew, or by the exercise of ordinary and reasonable care would have known, of the danger of crossing the tracks and that by looking along the tracks before stepping upon them, with ordinary care, he could have seen the approaching car in time to have avoided it, and if the jury further find that the plaintiff failed to exercise this ordinary care and thereby contributed to the injury complained of in his petition, then your verdict should be for the defendant."

The 7th proposition has not given us much trouble, and we pass that by.

The 10th proposition is one that has given us some trouble. As I have stated, there was some evidence tending to show—but to my mind, after reading it carefully, only remotely—that the cars had been accustomed to stop at this point—the cars going east and the cars going west—for the purpose of letting passengers off; and it is contended in argument that the plaintiff had a right to rely upon the fact that these cars did stop at that point and to be governed by that knowledge in getting on and off the cars; and it is urged very earnestly that this proposition should have been modified, or been refused, and that it is erroneous in this; that it did not, in addition to what was contained in the 10th proposition, add this—unless the jury shall further find that the plaintiff relied upon any regulation of the company or ordinance of the common council which would justify the plaintiff in omitting to look along the track—that is to say, that he himself recognized the fact that there was an ordinance requiring the cars to be slowed down to two miles an hour and the further fact that the cars usually stopped there. It will be sufficient, we think, for the disposition of this case, to say that at the time and after the argument by counsel and at the time the court should have given a full charge, there was no request whatever made in regard to this 10th proposition or any request made to the court to charge the law as the plaintiff's counsel claims the 10th proposition should have been; indeed the case was tried upon an entirely different theory; it was tried upon the claim that if the car was running faster than the ordinance prescribed, that that of itself would make the company liable and the evidence was framed and given in regard to that view of the law and the general course of counsel in conducting the case was based upon that theory or idea. We are inclined to the view, however, that under the facts of the case as they stand, with the evidence as it was at the time, that there was no error in the court giving the proposition as it stood. We desire to say, however, that counsel sometimes press a point of this class to the extreme point that they should be permitted to go. They seem to be afraid that the jury may decide against them and seemingly desire to have the court rule as a matter of law in a manner that is certainly very close to the danger point of error, and this charge itself lies very close to that point and is very nearly subject to exception in that

respect; but, for the reasons that we have stated, we are of opinion that we ought not to reverse this case for any alleged errors in charging or refusing to give the propositions, and the judgment of the court of common pleas will therefore be affirmed.